UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Michael Gary,

        Petitioner,        Case No. 16-cv-13537

v.

                                  Judith E. Levy

Thomas Winn,              United States District Judge

        Respondent.        Mag. Judge Patricia T. Morris

_____/

## OPINION AND ORDER DENYING PETITIONS FOR WRIT OF HABEAS CORPUS [1, 9], DENYING CERTIFICATE OF APPEALABILITY, AND DENYING PERMISSION TO APPEAL IN FORMA PAUPERIS

Petitioner Michael Gary, a Michigan prisoner, filed a pro se petition for the writ of habeas corpus under 28 U.S.C. § 2254 in 2016. (ECF No. 1.) The petition challenges Petitioner's plea-based conviction for one count of assault with intent to commit murder, Mich. Comp Laws § 750.83. While Petitioner's habeas petition remained pending, he pursued additional state-court remedies and then filed an amended habeas corpus petition in this Court. (ECF No. 9.) The amended petition raises six grounds for relief regarding Petitioner's former attorneys and the validity of his plea and plea agreement. Having carefully reviewed the pleadings

and state-court record, Petitioner's claims do not entitle him to relief. Accordingly, the initial and amended petitions are denied. The Court also denies a certificate of appealability and leave to proceed *in forma pauperis* on appeal.

## I. Background

### A.  The Charge, Plea, Sentence, and Direct Appeal

The charge against Petitioner arose from allegations that he assaulted his former wife. The trial court summarized the facts as follows:

> . . . [T]his incident occurred in the State of Michigan in Kent County at or near the City of Grand Rapids at or near . . . Andre Street Southwest and South Division. It would appear from the records that the defendant assaulted Cecelia Parish . . . and he did have her blood DNA on various articles which he had [on] him[,] and the victim in this matter as a result of the assault has suffered extremely serious injuries to her face, her brain. . . . [S]he now has a feeding tube, numerous facial fractures, significant trauma to her brain.

(ECF No. 7-2, PageID.102.)

On October 14, 2014, Petitioner pleaded no contest in Kent County Circuit Court to one count of assault with intent to commit murder. In exchange for Petitioner's plea to the charged offense, the prosecutor

agreed not to charge Petitioner with being a fourth habitual offender. The prosecutor also agreed to sentencing guidelines of 126 to 210 months (10-1/2 to 17-1/2 years) and to a minimum sentence of no more than fifteen years in prison. (*Id.*, PageID.100–101.)

At Petitioner's sentencing on November 20, 2014, the trial court granted defense counsel's objections to the scoring of the sentencing guidelines and then stated that the sentencing guidelines range was 108 to 180 months (nine to fifteen years). (ECF No. 7-3, PageID.109–110.) Defense counsel urged the trial court to sentence Petitioner at the lower end of the sentencing guidelines, but the trial court sentenced Petitioner at the top of the revised sentencing guidelines to a minimum term of fifteen years in prison and a maximum term of one hundred years. (*Id.*, PageID.111–113.)

Petitioner applied for leave to appeal in the Michigan Court of Appeals, claiming that his trial attorney's ineffectiveness rendered his no-contest plea unknowing and involuntary. According to Petitioner's application, his trial attorney informed him that the sentencing guidelines would score higher than they did, and there was no benefit to the plea bargain because the plea agreement and the guidelines score

3

were the same. (ECF No. 7-4, PageID.117.) The Michigan Court of Appeals denied leave to appeal "for lack of merit in the grounds presented." *People v. Gary*, No. 327537 (Mich. Ct. App. June 26, 2015). (ECF No. 7-4, PageID.115.)

In a later application for leave to appeal in the Michigan Supreme Court, Petitioner alleged that: (1) he felt pressured to plead guilty because trial counsel was unprepared for trial, did not have his best interests at heart, and failed to present evidence that the victim was on drugs; (2) he was innocent of the crime, and trial counsel allowed him to plead no contest to mis-scored guidelines; and (3) trial counsel convinced him to plead no-contest on the basis of mis-scored guidelines, and he did not have any time to make an informed, knowing, and intelligent decision. (ECF No. 7-5, PageID.148–150.) On March 8, 2016, the Michigan Supreme Court denied leave to appeal because it was not persuaded to review the questions presented to it. *See People v. Gary*, 499 Mich. 869 (2016) (table).

## B.   The Habeas Petitions, State Post-Conviction Proceedings, and Answers to the Habeas Petitions

On September 30, 2016, Petitioner commenced this case. His sole ground for relief in the initial habeas corpus petition is that trial counsel's

4

gross misinformation that his guidelines would score higher than they did rendered his plea invalid, and there was no benefit to the bargain. (ECF No. 1, PageID.2.) Respondent argued in an answer that the state appellate court's determination that Petitioner's claim lacked merit was not contrary to, or an unreasonable application of, federal law. (ECF No. 6, PageID.41, 59.) Petitioner then filed a reply in which he sought a stay of the federal proceeding while he exhausted state remedies for the claims that he presented to the Michigan Supreme Court on direct appeal. (ECF No. 8, PageID.237.)

Before the Court could rule on Petitioner's request for a stay, he filed a motion for relief from judgment in the state trial court. (ECF No. 19-4.) There, he argued that: (1) appellate counsel had provided ineffective assistance by not filing a proper motion to withdraw the no-contest plea after Petitioner's sentencing, and (2) his plea should be withdrawn as illusory and constitutionally void because the notice charging him with being a habitual offender was not based on a valid felony conviction. Petitioner argued in the alternative that his trial and appellate counsel were ineffective for failing to properly raise this issue.

5

(*Id.*, PageID.401, 407.) The state trial court denied Petitioner's motion under Michigan Court Rule 6.508(D)(2) and (D)(3). (ECF No. 19-5.)

Petitioner appealed the trial court's decision without success. The Michigan Court of Appeals denied leave to appeal because Petitioner had failed to establish that the trial court erred in denying his motion for relief from judgment. *See People v. Gary*, No. 343557 (Mich. Ct. App. Oct. 23, 2018). (ECF No. 19-6, PageID.416.) On April 30, 2019, the Michigan Supreme Court denied leave to appeal because Petitioner had failed to establish entitlement to relief under Michigan Court Rule 6.508(D). *See People v. Gary*, 503 Mich. 1020 (2019) (table).

On June 3, 2019, Petitioner filed an amended petition, which included a motion to amend his initial petition and to lift what he thought was a stay in this case. (ECF No. 9.) The amended petition raises the following six claims:

I.    Trial counsel was ineffective, and Gary's plea was invalid, because trial counsel grossly misinformed Gary as to the guidelines range; the final range maxed out the same as the cap in his sentencing agreement so there was no benefit to the plea;

II.   Gary felt pressured to plead guilty because trial counsel was not prepared for trial and did not have his best interest at heart; she failed to present evidence;

III.   Gary is innocent of this crime.  Trial counsel let him plead to mis-scored guidelines that if they were scored correctly, he would not have agreed to the plea.

IV.   Gary's trial counsel convinced him that it was best to waive a jury trial and enter a plea based on the mis-scored guidelines; Gary did not have time to make an informed, knowing, and intelligent decision.

V.   Appellate counsel provided ineffective assistance of counsel, where a motion to withdraw plea after sentence was not properly filed in the trial court, which denied the Michigan Court of Appeals the ability to adjudicate Defendant's claim on direct review. U.S. Const. AMS VI, XIV; and

VI.   Defendant's plea should be withdrawn as illusory and constitutionally invalid, where the habitual enhancement dismissed was not based on a valid felony conviction; alternatively, trial and appellate counsel were ineffective for failure to properly raise these obvious issues. U.S. Const. AMS VI, XIV.

(ECF No. 9, PageID.249.)[1]

On November 22, 2019, the Court granted Petitioner's motion to amend his petition and ordered Respondent to file a response to the amended petition and a supplemental record containing the relevant portions of the post-conviction proceedings in state court. (ECF No. 10.) Respondent subsequently filed a supplemental answer (ECF No. 18) and

---

[1]   In reviewing these six claims, the Court has also looked to the arguments that Petitioner made in his initial petition and his pleadings in state court.

supplemental record (ECF No. 19), and Petitioner filed a reply (ECF No. 20).

Respondent stands by his response to the initial petition regarding his first claim, and he argues that Petitioner's remaining claims are procedurally defaulted, barred by the habeas statute of limitations, not cognizable on habeas review, or meritless. (ECF No. 18, Page.ID.315–316, 331, 346.) Respondent, nevertheless, recognizes that Petitioner's six claims overlap with each other and that there was some overlap of claims in state court. (*Id.*, PageID.331–335.)

Moreover, the habeas statute of limitations is not jurisdictional, *Holland v. Florida*, 560 U.S. 631, 645 (2010) (quoting *Day v. McDonough*, 547 U.S. 198, 205 (2006)), and a court may bypass a procedural-default question in the interest of judicial economy if the claim is easily resolvable against the habeas petitioner. *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997). In the interest of judicial economy, the Court "cut[s] to the merits" here, as a procedural-default analysis and discussion on the statute of limitations would unnecessarily complicate this case. *See Thomas v. Meko*, 915 F.3d 1071, 1074 (6th Cir.), *cert. denied*, 139 S. Ct. 2726 (2019).

## II.  Standard of Review

The Anti-Terrorism and Effective Death Penalty Act ("AEDPA") limits the authority of a federal district court to grant habeas relief on a claim that was adjudicated on the merits by the state courts. *See* 28 U.S.C. § 2254(d). A § 2254 petition may only be granted if the state court adjudication was "contrary to" or resulted in an "unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or "was based on an unreasonable determination of the facts," 28 U.S.C. § 2254(d)(2).

A state-court decision is "contrary to" clearly established law "if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts." *Moore v. Mitchell*, 708 F.3d 760, 774 (6th Cir. 2013) (citing *Williams v. Taylor*, 529 U.S. 362, 412–13 (2000)). And a state-court decision is an "unreasonable application of clearly established" law "where 'the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably

applies that principle to the facts of the [petitioner's] case.'" *Carter v. Bogan*, 900 F.3d 754, 767 (6th Cir. 2018) (alterations in original) (quoting *Williams*, 529 U.S. at 413), *cert. denied*, 140 S. Ct. 56 (2019).

An "unreasonable application" is more than incorrect; it must be "objectively unreasonable." *Id*. at 767–68 (citing *Renico v. Lett*, 559 U.S. 766, 773 (2010)). In other words, the federal habeas court must find that "the state court's ruling . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Id*. (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). A § 2254 petition should be denied if it is within the "realm of possibility" that "fair-minded jurists" could find the state court decision was reasonable. *Woods v. Etherton*, 136 S. Ct. 1149, 1152 (2016).

## III. Discussion

### A. Trial Counsel's Alleged Misinformation

Petitioner alleges first that his trial attorney was ineffective and rendered his plea invalid because the attorney grossly misinformed him about the sentencing guidelines range. According to Petitioner, defense counsel led him to believe that, if he rejected the plea offer and went to

10

trial, the sentencing guidelines would be much higher than the sentencing agreement, which called for a minimum sentence of no greater than fifteen years. Petitioner asserts that there was no benefit to the plea and sentencing agreement because the longest minimum sentence under the sentencing guidelines proved to be the same as the cap in his sentencing agreement. (ECF No. 1, PageID.2; ECF No. 9, PageID.249; ECF No. 7-4, PageID.125–126.)

Petitioner raised this claim in the Michigan Court of Appeals on direct review. The Court of Appeals denied leave to appeal, without any discussion, for lack of merit in the claim.

### 1. Legal Framework

To prevail on his claim, Petitioner must show "that counsel's performance was deficient" and "that the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The deficient-performance prong "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. Petitioner must demonstrate that "counsel's representation fell below an objective standard of reasonableness." *Id*. at 688.

11

To satisfy the "prejudice" prong of *Strickland*, a defendant must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

When a defendant pleads guilty or no-contest on the advice of counsel, "the voluntariness of the plea depends on whether counsel's advice 'was within the range of competence demanded of attorneys in criminal cases.'" *Hill v. Lockhart*, 474 U.S. 52, 56 (1985) (quoting *McMann v. Richardson*, 397 U.S. 759, 771 (1970)). The "prejudice" requirement "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." *Id.* at 59. The defendant must show a reasonable probability that, but for counsel's errors, he would not have pleaded guilty or no-contest and would have insisted on going to trial. *Id.*

### 2. Application

In Michigan, the state "sentencing guidelines . . . create a range within which the trial court must set the minimum sentence." *People v. Drohan*, 475 Mich. 140, 161 (2006), *overruled in part on other grounds by*

*People v. Lockridge*, 498 Mich. 358 (2015). "The maximum sentence is not determined by the trial court, but rather is set by law." *Id.*

At the plea proceeding in Petitioner's case, the prosecutor stated that if Petitioner pleaded no contest, he (the prosecutor) would agree to sentencing guidelines of 126 to 210 months, or 10-1/2 to 17-1/2years. (ECF No. 7-2, PageID.97.) Petitioner was fifty-two years old at the time. (*Id.*)

The sentencing agreement also called for a minimum sentence of no more than fifteen years, and the dismissal of a notice charging Petitioner with being a habitual offender. (*Id.*, PageID.100–101.) The parties estimated that, if Petitioner went to trial and was convicted as charged as a habitual offender, the sentencing guidelines range would be about fourteen to thirty-five years or even as high as 171 to 570 months (14-1/2 to 47-1/2 years). (*Id.*, PageID.95–97.)

At Petitioner's sentencing hearing, defense counsel objected to the scoring of the guidelines. The sentencing guidelines range was reduced from 126 to 210 months (10-1/2 to 17-1/2 years) to 108 to 180 months (nine to fifteen years). (ECF No. 7-3, PageID.110.) The prosecutor then correctly pointed out that the sentencing agreement of no more than

fifteen years for the minimum sentence was at the top of the guidelines, as currently scored. (*Id.*)  As such, the agreement to limit the minimum sentence to no more than fifteen years was not as favorable as the parties initially thought it would be. The parties initially thought that the cap on the sentence (fifteen years) would be 2-1/2 years lower than the top of the sentencing guidelines as first calculated (17-1/2); however, as amended, the top of the sentencing guidelines (fifteen years) was the same as the cap on the minimum sentence (fifteen years).

Nevertheless, "[a] miscalculation or erroneous sentence estimation by defense counsel is not a constitutionally deficient performance rising to the level of ineffective assistance of counsel." *United States v. Gordon*, 4 F.3d 1567, 1570 (10th Cir. 1993); *accord Doganiere v. United States*, 914 F.2d 165, 168 (9th Cir. 1990) (stating that defense counsel's inaccurate prediction of the sentence the defendant would receive after pleading guilty "[did] not rise to the level of a gross mischaracterization of the likely outcome of his case, and thus [did] not constitute ineffective assistance of counsel"); *United States v. Arvanitis*, 902 F.2d 489, 494 (7th Cir. 1990) (concluding that defense counsel's mere inaccurate prediction of sentencing guidelines did not amount to ineffective assistance).

14

Thus, "the mere fact that an attorney incorrectly estimates the sentence a defendant is likely to receive is not a 'fair and just reason' to allow withdrawal of a plea agreement." *United States v. Stephens*, 906 F.2d 251, 253 (6th Cir. 1990) (quoting *United States v. Sweeney,* 878 F.2d 68, 70 (2d Cir. 1989)); *see also Little v. Allsbrook*, 731 F.2d 238, 241 (4th Cir. 1984) ("An attorney's 'bad guess' as to sentencing does not justify the withdrawal of a guilty plea and is no reason to invalidate a plea.") Defense counsel's representations regarding the guidelines sentencing range were simply "an estimate reflecting what [s]he believed the likely range would be." *Sweeney*, 878 F.2d at 70. Petitioner is not entitled to "characteriz[e] a mistaken prediction as ineffective assistance of counsel." *Id.*

At worst, defense counsel initially overestimated the sentencing guidelines and overstated the value of the sentencing cap and the plea agreement. To her credit, however, defense counsel persuaded the trial court to reduce the sentencing guidelines range, and then she argued in favor of a minimum sentence at the lower end of the revised guidelines.

Furthermore, the plea and sentencing agreement benefitted Petitioner even if it was not as valuable as first anticipated. Although

15

Petitioner claims that he was not a fourth habitual offender, he concedes that he had at least one prior felony conviction. Without the plea and sentencing agreement, he would have been charged as a habitual offender, and the upper limit of the sentencing guidelines range would have increased under Mich. Comp. Laws § 777.21(3). There also would have been no cap on the minimum sentence without the plea and sentencing agreement, and the trial court could have exceeded the guidelines.

Defense counsel's advice to Petitioner to plead no contest fell within the range of competence demanded of attorneys in criminal cases. There was a strong possibility that Petitioner would have been convicted as charged if he went to trial and that he would have received a longer sentence following a trial. Petitioner has failed to show that defense counsel's performance was deficient.

Petitioner also has not shown that defense counsel's performance prejudiced him. He contends in his initial petition that he would have insisted on going to trial or tried to negotiate a minimum sentence of nine years if he had been informed that the sentencing guidelines were nine

to fifteen years, instead of approximately fourteen to forty-seven years. (ECF No. 1, PageID.4.)

It is unlikely that Petitioner would have been able to negotiate a minimum sentence at the bottom of the guidelines, given the violent nature of the assault. The trial court, in fact, stated at Petitioner's sentencing that the victim had been in a coma since the assault, that she would probably die, and that Petitioner would probably be charged with murder if the victim did die. (ECF No. 7-3, PageID.112.) Furthermore, Petitioner's allegation that he would have insisted on going to trial if it were not for counsel's error is insufficient to establish the prejudice prong of *Strickland*. *Joseph v. Butler*, 838 F.2d 786, 791 (5th Cir. 1988); *United States v. Key,* 806 F.2d 133, 139 (7th Cir. 1986)).

The state appellate court's conclusion that Petitioner's claim lacked merit was not contrary to, or an unreasonable application of, *Strickland* or *Hill.* Therefore, Petitioner is not entitled to relief on his claim.

### B.  Trial Counsel's Preparation

Petitioner alleges next that he felt pressured to plead no contest because his trial counsel was not prepared for trial and she did not have

his best interests at heart. (ECF No. 9, PageID.249.) Petitioner also alleges that his attorney failed to present evidence. (*Id.*)

In state court, Petitioner argued that trial counsel should have shown that the victim was on drugs and was trying to contact him. (ECF No. 7-4, PageID.125, 132; ECF No. 7-5, PageID.148.) Even if that were true, the trial court stated that there was no justification for Petitioner's attack on the victim. (ECF No. 7-3, PageID.112.)

Additionally, the record does not support Petitioner's allegation that his attorney was unprepared for trial and did not have his best interests at heart. Defense counsel stated at the plea proceeding that, if the case went to trial, she would not be arguing that Petitioner was not present during the crime; instead, the defense was going to be that Petitioner did not intend to commit murder. (ECF No. 7-2, PageID.89.)

Petitioner, moreover, stated at the plea proceeding that it was his choice to enter a no-contest plea and that his plea was free and voluntary. (*Id.*, PageID.101-102.) He gave no indication that he felt pressured to plead no contest. A guilty plea and, by extension, a no-contest plea,

> invariably is made without complete foresight of the possible outcome of alternative procedures that might have been undertaken . . . . There is no guarantee that the accused will make the correct decision or that in hindsight such plea will

18

not reflect an error in fact or judgment. Such uncertainty, which after all is the linchpin of every plea bargain, is inherent in a guilty plea and does not make the plea involuntary.

*Johnson v. United States*, 539 F.2d 1241, 1243 (9th Cir. 1976). Accordingly, habeas relief is not warranted on Petitioner's claim that he was pressured to plead no contest due to defense counsel's alleged lack of preparation or other inadequacies.

### C. Innocence

In his third claim, Petitioner alleges that he is innocent of the crime. Petitioner asserts that trial counsel permitted him plead to mis-scored guidelines and that he would not have pleaded no contest if the guidelines had been scored correctly. (ECF No. 9, PageID.249.)

Petitioner's challenge to defense counsel's scoring of the sentencing guidelines is repetitious of his first claim, and for the reasons given in the Court's discussion of that claim, his argument lacks merit. To the extent Petitioner is asserting an independent claim of actual innocence, he is not entitled to relief because actual-innocence claims are not a basis "for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding." *Herrera v. Collins*, 506 U.S. 390, 400 (1993); *see also Cress v. Palmer*, 484 F.3d 844,

19

854 (6th Cir. 2007) (noting that a free-standing claim of actual innocence, when not coupled with allegations of constitutional error at trial, is not cognizable on habeas review). "This rule is grounded in the principle that federal habeas courts sit to ensure that individuals are not imprisoned in violation of the Constitution – not to correct errors of fact." *Herrera*, 506 U.S. at 400.

Furthermore, although Petitioner did not plead guilty, he conceded at his sentencing that he let his anger get the best of him during the incident with his estranged wife. (ECF No. 7-3, PageID.112.) And to be credible, a claim of actual innocence requires a petitioner to support his allegations of constitutional error with new reliable evidence. *Schlup v. Delo,* 513 U.S. 298, 324 (1995).

Petitioner has not presented the Court with any new evidence, and his claim of actual innocence falls short of the "extraordinarily high" threshold needed to prove a claim of actual innocence. *Herrera*, 506 U.S. at 417. Accordingly, the Court declines to grant relief on Petitioner's claim of actual innocence.

### D. Trial Counsel – Petitioner's Lack of Sufficient Time

In his fourth claim, Petitioner alleges that he did not have enough time to make an informed, knowing, and intelligent decision because his trial attorney convinced him to waive a jury trial and enter a plea based on mis-scored sentencing guidelines. (ECF No. 9, PageID.249.) The Court has already adjudicated Petitioner's claim about trial counsel's estimation of the sentencing guidelines. *See supra*, Section III.A. Therefore, the only question is whether Petitioner's no-contest plea was involuntary or otherwise invalid due to a lack of enough time to make an informed, knowing, and intelligent decision.

A no-contest plea must be voluntary and intelligent for it to be constitutionally valid. *See Bousley v. United States*, 523 U.S. 614, 618 (1988) (citing *Brady v. United States*, 397 U.S. 742, 748 (1970)). For a plea to be voluntary, the defendant must understand the direct consequences of a plea, which includes the maximum and [any mandatory] minimum sentences that may be imposed." *United States v. Martin*, 668 F.3d 787, 792 (6th Cir. 2012). A plea is intelligent if the accused received notice of the charge against him. *Bousley*, 523 U.S. at 618. The waiver of constitutional rights must be "done with sufficient

awareness of the relevant circumstances and likely consequences." *Brady,* 397 U.S. at 748.

The trial court informed Petitioner at the plea proceeding that his case was going to trial the following week if no plea was entered and that, "after this morning we're done. We're . . . not even going to talk about it. We're going to trial." (ECF No. 7-2, PageID.94.) But the Court also stated that Petitioner would be given an opportunity to discuss the prosecutor's plea offer with his attorneys, *id.*, and the record shows that the proceeding was adjourned for twenty-three minutes – between 9:44 a.m. and 10:07 a.m. – while Petitioner spoke with his attorneys. (*Id.*, PageID.98.)

There is no indication in the record that the trial court interrupted or terminated Petitioner's consultation with his attorneys. When the proceedings resumed in the courtroom, the trial court asked Petitioner whether he was prepared to enter a no-contest plea, and Petitioner answered, "Yes, sir." (*Id.*, PageID.99.) Petitioner went on to say that he understood the offense to which he was pleading and the maximum sentence for his crime. (*Id.*, PageID.100.) He also stated that he had read

the advice-of-rights form, that he understood those rights, and that he was willing to waive those rights and enter a no-contest plea. *Id*.

Continuing, Petitioner assured the trial court that he understood the plea agreement, that no one had promised him anything other than what was already placed on the record, that no one had threatened him, and that it was his own choice to enter a no-contest plea. (*Id.*, PageID.101.) He had no questions about his plea, and he stated that his plea was free and voluntary. (*Id.*, PageID.101–102.)

Petitioner's "[s]olemn declarations in open court carry a strong presumption of verity," *Blackledge v. Allison*, 431 U.S. 63, 74 (1977), and at no point during the plea proceeding did Petitioner say that he needed more time to speak with his attorneys. He also did not express any hesitancy about the decision he had made, and at his sentencing the only regret he expressed was the sorrow he had caused his ex-wife and her family. (ECF No. 7-3, PageID.112.)

The record does not support Petitioner's allegation that he did not have enough time to make an informed, knowing, and intelligent decision. The fact that Petitioner may have preferred to plead no contest, knowing that his chances for an acquittal at trial were slight and that his

sentence might be longer following a trial, does not necessarily prove that his plea was involuntary. *Brady*, 397 U.S. 749-50. Accordingly, habeas relief is not warranted on Petitioner's claim.

### E.  Appellate Counsel

The fifth habeas claim alleges that Petitioner's appellate counsel was ineffective because the attorney failed to file a proper motion to withdraw Petitioner's plea after the sentencing. According to Petitioner, the lack of a motion to withdraw the plea deprived the Michigan Court of Appeals of the ability to adjudicate Petitioner's claim on direct review.

On habeas review, the proper standard for evaluating a claim about appellate counsel is the standard enunciated in *Strickland*. *Smith v. Robbins*, 528 U.S. 259, 285 (2000). To prevail on his claim about appellate counsel, Petitioner must show: (1) that appellate counsel's performance was objectively unreasonable; and (2) a reasonable probability that, but for his counsel's unprofessional errors, he would have prevailed on appeal. *See id*. at 285–86 (citing *Strickland*, 466 U.S. at 687-91, 694).

Here, Petitioner alleges that his appellate attorney should have moved to withdraw Petitioner's no-contest plea after Petitioner's sentencing. The trial court, however, adjudicated this claim during the

24

post-conviction proceedings, and according to the trial court, Petitioner failed to show that a motion to withdraw the plea was necessary or likely to be granted. (ECF No. 19-5, PageID.414.)

A motion to withdraw the plea likely would have been denied, because the record indicates that Petitioner's plea was voluntary and knowingly made. The trial court, in fact, opined at the plea proceeding that Petitioner understood the plea agreement and that his plea was voluntary and accurate. (ECF No. 7-2, PageID.103.)

It also appears that counsel's failure to file a motion to withdraw the no-contest plea had no bearing on the state appellate court's decision. The Michigan Court of Appeals denied leave to appeal for lack of merit, not on some procedural basis.

Petitioner has failed to show that his appellate attorney's performance was deficient and that the alleged deficiency prejudiced him. Therefore, the state trial court's rejection of Petitioner's claim was not contrary to, or an unreasonable application of, *Strickland* or *Robbins*, and habeas relief is not warranted on Petitioner's claim.

### F.  The Plea Agreement

In his sixth and final claim, Petitioner alleges that he should be permitted to withdraw his plea as illusory and constitutionally invalid because the habitual offender notice was not based on a valid felony conviction. Petitioner asserts that an out-of-state conviction listed on the habitual offender notice was a misdemeanor, not a felony. Petitioner argues in the alternative that his trial and appellate attorneys were ineffective for failure to properly raise all his claims on direct appeal.

Even if one of Petitioner's prior convictions was a misdemeanor and not a felony for purposes of scoring the sentencing guidelines, Petitioner concedes that he had at least one prior felony conviction. The existence of even one prior felony conviction would have increased the upper limit of the sentencing guidelines. Mich. Comp. Laws § 777.21(e)(a).

The plea and sentencing agreement benefitted Petitioner in another way: it set a cap on the minimum sentence and virtually ensured that the trial court would not exceed the sentencing guidelines. The agreement was not illusory, and Petitioner's attorneys were not ineffective for failing to raise this claim or any of Petitioner's other claims in state court.

## IV.  Conclusion and Order

26

Petitioner's claims lack merit, and the state courts' adjudications of some claims on the merits were neither contrary to, nor an unreasonable application of, Supreme Court precedent. The state court decisions also were not so lacking in justification that there was an error beyond any possibility for fair-minded disagreement. Accordingly, the Court denies the initial and amended petitions for a writ of habeas corpus.

Federal Rule of Appellate Procedure 22(b)(1) provides that an appeal may not proceed unless a certificate of appealability is issued under 28 U.S.C. § 2253. Rule 11(a) of the Rules Governing Section 2254 Cases requires the Court to "issue or deny a certificate of appealability when it enters a final order adverse to the applicant."

To obtain a certificate of appealability, a prisoner must make a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A petitioner makes the required showing if he demonstrates that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000).

Petitioner has failed to make a substantial showing of the denial of a federal constitutional right, and reasonable jurists would not find this Court's assessment of Petitioner's claims debatable or wrong. Nor would reasonable jurists conclude that the issues deserve encouragement to proceed further. Consequently, Petitioner is not entitled to a certificate of appealability. *Millender v. Adams*, 187 F. Supp.2d 852, 880 (E.D. Mich. 2002). He may apply to the Court of Appeals for a certificate of appealability.

The Court further concludes that an appeal from this decision could not be taken in good faith. Therefore, Petitioner may not proceed *in forma pauperis* on appeal. 28 U.S.C. § 1915(a)(3).

IT IS SO ORDERED.

Dated: September 4, 2020              s/Judith E. Levy
Ann Arbor, Michigan                  JUDITH E. LEVY
                                     United States District Judge

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on September 4, 2020.

                                     s/William Barkholz
                                     WILLIAM BARKHOLZ
                                     Case Manager